PETERSON, Respondent, vs. TIME INDEMNITY COMPANY, Appellant.

*February 18—March 11, 1913.*

*Accident insurance: Application: Statement as to occupation: "Supervising:" Insanity: Evidence: Opinions of nonexperts: "Purposely self-inflicted injuries:" Instructions to jury: Harmless errors.*

1. Where, in his application for accident insurance, the assured stated that his occupation was "supervising a dray line only" and left unanswered a question as to what his duties "as so occupied" were, there was no false statement which avoided the policy, although he did not always have an assistant and during parts of the year drove and operated the dray himself. "Supervising" does not necessarily mean regulating and directing the work of subordinates alone, but may properly include taking an active part in the work.

2. Whether or not supposed abnormal conduct of a person, testified to by a witness, is of sufficient importance and significance to make the opinion of the witness helpful to the jury in deciding the question of the sanity of such person, must be determined in the first instance by the trial court, and its decision will not be disturbed on appeal if there was substantial evidence upon which the witness could legitimately form an intelligent opinion.

3. In this case, abnormal acts of the person in question, such as forgetfulness of important engagements made but an hour or two before, a peculiar and staring look of the eye, repetitions and forgetfulness in his conversation, and other acts of similar nature which were new to him, are *held* sufficient to justify the trial court in its discretion to allow the witnesses who related such acts to give their opinions as to such person's sanity.

4. Death occurring from "purposely self-inflicted injuries," within the meaning of an accident policy, must be the result of the voluntary act of a man having at the time sufficient mental ability to entertain an intelligent purpose and acting upon such a purpose in inflicting upon himself the injuries which cause his death; but it is not necessary that he should be able to distinguish between right and wrong.

5. In an action upon such a policy, where the death of the assured was caused by his hammering himself upon the head with a sledge hammer, the error in charging the jury to the effect

that if they found the deceased had not sufficient power to distinguish right from wrong they might find he was insane and render a verdict for plaintiff, was not such as to work a reversal, it appearing that no other verdict could reasonably be expected on the evidence from any intelligent jury under any charge.

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

This is an action by the beneficiary named in an accident insurance policy to recover for the accidental death of the assured, who was her husband. The policy was conditioned for the payment of $400 for death resulting from personal bodily injuries leaving visible, external marks, and effected solely by "external, violent, accidental, and involuntary means," and further provided that there should be no liability in case the death occurred from "purposely self-inflicted injuries." It appeared without dispute that the assured killed himself by hammering himself upon the head with a sledge hammer. The plaintiff claimed that the assured was insane at the time. A verdict for the plaintiff was returned by the jury, and from judgment thereon defendant appeals.

*A. W. McLeod,* attorney, and *Julius E. Roehr,* of counsel, for the appellant.

*C. F. Morris,* for the respondent.

WINSLOW, C. J. There are only three questions in the case which it is deemed necessary to treat, viz.: (1) Did the assured untruthfully state his occupation in his application? (2) Did the court err in its rulings upon the evidence offered to prove the insanity of the deceased? and (3) Did the court commit prejudicial error in the charge to the jury on that subject?

1. The assured stated in his application that his occupation was "supervising a dray line only," and left unanswered the question as to what his duties "as so occupied" were. The

testimony shows that the deceased was a drayman at Iron River, owning three horses; that during the dull season he drove and operated the dray himself, and during the spring and fall generally had an assistant to help him, sometimes operating two rigs, the assistant working under his direction. It cannot be doubted that the deceased in fact supervised the business at all times.    If supervision means regulating and directing the work of subordinates alone, then the answer was not correct; but it has been held in this court that supervision does not necessarily mean doing no manual labor, but may properly include taking an active part in the work.    *Schmidt v. American M. A. Asso.* 96 Wis. 304, 71 N. W. 601.    Had the defendant desired to know the exact nature of all of the duties of the deceased, it could have insisted on an answer to the question which was left unanswered in the application.

2.  The testimony upon which the plaintiff relied to prove insanity on the part of the deceased was given by intimate acquaintances who saw the deceased frequently prior to his death, in a business or personal way, or both, and who first testified to the peculiar actions of the deceased which they noticed shortly before his suicidal act, and then were allowed to state that in their opinion he was insane.    It is claimed by the defendant that the supposed peculiar acts testified to by these witnesses were of such a trivial and unimportant nature that the court erred in allowing them to express an opinion as to the sanity of the deceased.    This contention must be overruled.  . The trial court is charged with the duty of deciding in the first instance whether the supposed abnormal conduct of the person in question is of sufficient importance and significance to make the opinion of the witness helpful to the jury in deciding the question of the sanity of such person. No hard-and-fast rule can be laid down in advance to govern the decision of the trial court on this question.    It must rest very largely in the wise discretion of that court, and the decision will not be disturbed here unless it appears that there was no substantial evidence upon which the witness could

legitimately form an intelligent opinion as to the sanity or insanity of the person in question. We find no such case here. It is true there were no acts of violence or frenzy related by the witnesses, but all of the witnesses related acts abnormal in their nature, such as forgetfulness of important engagements which the deceased had made but an hour or two previously, a peculiar and staring look of the eye, repetitions and forgetfulness in his conversation, and other actions of similar nature which were new to him. We regard the foundation so laid as sufficient to justify the trial court in its discretion to allow the witnesses to give their opinions as to Peterson's sanity. How much probative force the opinions carried was a question for the jury.

3. The court instructed the jury, on the defendant's request, as follows:

"If Bert Peterson inflicted the injuries which resulted in his death, then the presumption is he acted voluntarily, and the plaintiff cannot recover unless she prove that the assured at the time he struck himself by reason of mental derangement arising from the disease or otherwise, and did not comprehend, believe or realize that he was striking himself, and that death would result."

On like request he gave the following charge:

"If Bert Peterson, by his own voluntary act, inflicted the injuries which resulted in his death, intending at the time to inflict them, even though he did not comprehend that they would result in death, the injuries were not involuntary or accidental within the meaning of the policy, and the plaintiff cannot recover."

To this latter sentence, however, he added the words "provided you find that he had sufficient will power to control his actions."

At a later point in the charge he gave the following instruction:

"In order for you to find a verdict in favor of the plaintiff and against the defendant you must find and believe from

the evidence that the deceased was insane. Insanity is said to be a disease of the brain affecting the mind. If you find and believe from the evidence that the deceased was actually insane, that he had not sufficient power to distinguish right from wrong, or if he did have the power to distinguish between right and wrong that he did not have sufficient mental power to control his action, then you may find that he was insane and bring in a verdict in favor of the plaintiff."

The appellant contends that the last instruction quoted was prejudicially erroneous, and it may be at once admitted that it was not accurate and probably affirmatively erroneous. Ability to distinguish between right and wrong measures the quality of an act when we are to judge whether it involves criminal responsibility, but ability to entertain and act upon an intelligent purpose measures its quality when we are to determine whether it is *purposely* committed. In this connection, of course, *purposely* means with an intelligent, though not perhaps wise, purpose.

The rule adopted in *Pierce v. Travelers' L. Ins. Co.* 34 Wis. 389, and approved in *Cady v. Fidelity & C. Co.* 134 Wis. 322, 113 N. W. 967, is that in order to constitute *suicide* (*i. e.* purposely inflicted death) the act must be "the voluntary and wilful act of a man having at the time sufficient powers of mind and reason to understand the physical nature and consequences of such act, and having at the time a purpose and intention to cause his own death by that act; and that the question whether at the time he was capable of understanding and appreciating the moral nature and quality of his purpose is not relevant to the inquiry, further than as it might help to illustrate the extent of his capacity to understand the physical character of the act itself."

It is quite evident that the instructions given by the court, especially the one last quoted, do not state accurately or satisfactorily the principles which should have been stated to the jury.

Were the case one where there seemed doubt as to the pro-

priety of the verdict rendered, the question whether there ought not to be a reversal would be somewhat serious. We cannot think, however, that any other verdict could be reasonably expected on this evidence by any intelligent jury under any charge. While it would not have been proper to take the question from the jury, we think it would be very surprising if any jury should find that a man who beats his own brains out with a sledge hammer was sane at the time.

Under sec. 3072m, Stats., the erroneous character of the charge furnishes no ground for reversal, because it does not appear that any substantial right of the defendant has been affected by the error.

*By the Court.*—Judgment affirmed.